HOUSTON, EAST AND WEST TEXAS RAILWAY v. PETERS & WILLIS.

Delivered March 11, 1897.

**Interstate Commerce—Penalty for Refusal to Deliver Freight—State Statute Inoperative.**

The Act of May 6, 1882, prescribing a penalty for failure of a carrier to deliver goods in its possession, on demand of the consignee and tender of the freight specified in the bill of lading, in so far as it imposes a penalty against a carrier engaged in interstate commerce, is in conflict with the Act of Congress of February 4, 1887, entitled, "An Act to regulate commerce," and therefore inoperative.

APPEAL from Polk. Tried below before Hon. L. B. HIGHTOWER.

*W. H. Wilson* and *Baker, Botts, Baker & Lovett,* for appellant.—
The Act of May 6, 1882, has no application to interstate transportation under a joint legal rate, Congress having undertaken to legislate on that subject-matter, and its legislation being exclusive. Railway v. Heffly, 158 U. S., 98; Railway v. Carden, 34 S. W. Rep., 145; Wright v. Howe, 24 S. W. Rep., 314; Interstate Commerce Act, 24 Statutes at Large, 379; 25 Statutes at Large, 855.

*Hill & Hill*, for appellees.—The interstate commerce law has no application to this case. Sayles' Rev. Civ. Stats., art 4258a; Railway v. Dwyer, 75 Texas, 572.

It does not involve amount or rate of freight charges, but identity of the freight itself, and not inhibited by or provided for by interstate law, as in Receiver v. Fischl, 1 Texas Civ. App., 552; Schloss v. Railway, 85 Texas, 603.

PLEASANTS, ASSOCIATE JUSTICE.—The nature of this suit is thus given in brief of counsel for appellees:

"On May 14, 1895, appellees, E. D. Peters and W. L. Willis, partners, under the name of Peters & Willis, doing a mercantile business in Livingston, Texas, filed their original petition in the District Court of Polk County against appellant, the Houston, East & West Texas Railway Company. On December 2, 1895, they filed their first amended original petition, alleging that defendant is a corporation, duly incorporated under the laws of this State, operating a line of its railroad through Polk County, Texas.

"On April 19 the Wood-Maude Milling Company, of St. Louis, Mo., shipped by the St. Louis Southwestern Railway Company, via M. and O. and Cairo Railway Company and connecting carriers, to shipper's order, at Livingston, Texas, 700 sacks of meal, weighing 38 pounds per sack, 29,600 pounds, at 40 cents per 100 pounds, delivered at Livingston, Texas, rates guaranteed. The meal was shipped on an order by wire from appellees to Wood-Maude Milling Company, who shipped said meal over said St. Louis Southwestern Railroad Company and connecting lines, and received a bill of lading, executed by its general agent, showing receipt of 700 sacks of meal, weight 38 pounds per sack, total 26,600 pounds, guaranteed to be delivered to shipper's order at Livingston, Texas, for 40 cents per 100 pounds.

"The bill of lading stipulates that the delivering carrier, appellant, was to notify Peters & Willis, appellees, at Livingston, Texas. The bill of lading also provides that it is mutually agreed that each carrier shall not be liable for loss, damages, injuries, claims or penalties occurring or accruing on any other connecting line or carrier, and the contract is executed as to each carrier when it delivers the goods shipped without unavoidable delay to the next carrier or connecting line. By the terms of the bill of lading the St. Louis Southwestern Railroad Company, in executing said bill of lading, acted as the agent of all the connecting carriers.

"It is alleged in the petition, that appellant is one of the connecting carriers as provided; that the St. Louis Southwestern Railroad Company acted as the agent of appellant in executing said bill of lading; that appellant and the initial carrier, and all connecting lines, acted together in receiving and carrying this freight over their lines; that the initial carrier had authority from appellant, the delivering carrier, to issue said through bill of lading and guarantee said rate of freight;

that, by agreement between initial and immediate carriers and appellant, appellant was bound to agree to the terms shown by the bill of lading; that the said initial carrier and the connecting lines and appellant had adopted, at the time of said shipment, a legal joint tariff of rates; that appellant received said freight on its line of railroad at Livingston, Texas, April 25, 1895; that on that day appellant by its agent notified appellees of the arrival of said freight for them at appellant's depot at Livingston, as per the terms and directions of the said bill of lading; that on April 26, 1895, appellees paid the draft of said Wood-Maude Milling Company drawn on them for the purchase price of said carload of meal, with said bill of lading attached, through the Planters' and Mechanics' National Bank of Houston, Texas, and on said 26th day of April said bill of lading, indorsed 'Paid,' was delivered to appellant for appellee's benefit; that on April 27, 1895 (appellant then being in possession of said bill of lading), appellees demanded of appellant, through its agent, said freight at its depot in Livingston, and then tendered defendant, through its said agent at said place, the full amount of money for the freight charges, as shown by the bill of lading, $106.40, the correct amount therefor, which was refused by said agent, because the number of the car did not correspond with the number in the bill of lading; that the weights and classifications shown by the bill of lading were correct, and no issue was made as to same by defendant; that on April 27, 1895, defendant being in possession of the bill of lading, plaintiff W. L. Willis, having in his possession $106.40 in lawful money, offered to pay B. F. Haynes, defendant's agent in possession of said freight at Livingston, Texas, the same, it being the correct amount for said freight charges; that said B. F. Haynes then refused to accept the money, because, as he said, the number on the car containing the said freight did not correspond with the number shown by the bill of lading; that plaintiffs, through W. L. Willis, then protested against this action of defendant's agent in refusing to deliver the freight to him; that said plaintiff, W. L. Willis, then placed on the desk of said Haynes, defendant's agent, enough lawful money and a small accepted check of defendant, payable on demand, and receivable by defendant's said agent for freight, to pay said freight, and tendered the same to said Haynes in payment of said freight, which said Haynes refused; only because the number on the car did not correspond with the number of the car shown by the bill of lading, and but for this would have received same; that defendant held said freight, and refused to deliver to plaintiffs, for five days, viz., April 27, 28, 29, 30, and May 1, 1895; that on May 1, 1895, defendant demanded of plaintiff said freight charges, $106.40, and demurrage for three days, $3, by presenting a waybill corresponding with said bill of lading and showing freight charges, $106.40, demurrage, $3, total, $109.40, which amount plaintiffs paid under protest as to demurrage, which was charged from April 27, at 6 p. m.

"It is alleged, that the initial carrier acted as defendant's agent in executing the bill of lading; that defendant ratified the terms of the bill of lading, and accepted the freight money for all the connecting lines, having advanced the money to pay its connecting lines their part of the freight. It is alleged that plaintiffs owned the freight when the bill of lading was delivered to defendant, and when they made said tenders and demand, and when they paid said freight; that defendant held possession of said freight and said bill of lading, and refused to deliver the freight to plaintiffs, during said time of demurrage charges. Prayer for judgment for statutory penalty of $106.40, freight charges shown by the bill of lading, for each day defendant so held said freight after demand and tender of said freight charges, for five days, for the demurrage paid, damages, and general relief. Waybill and duplicate bill of lading made exhibits to plaintiffs' petition."

The defendant, the appellant here, answered by general and special demurrers, and by general denial, and by special denial under oath of both the alleged partnerships between defendant and the initial carrier, and also the alleged agency of said initial carrier, or that said carrier was authorized to bind defendant by contract. The answer of defendant further averred that the actual weight of the freight was much greater than that named in the bill of lading, and that, by the terms of the bill, the true weight of the freight was to be determined by the delivering carrier; and the answer also alleged certain facts in explanation and justification of the delay in delivering the freight, and further, that the demurrage was for the car remaining on its track unloaded for three days, and finally, that the shipment was interstate, and that the penal laws of Texas did not apply to such shipment.

Exceptions of the plaintiffs to defendant's trial amended answer were overruled, and all of defendant's exceptions to the petition were overruled, except that made to the claim for exemplary damages, which was sustained. Upon trial of the cause, the plaintiffs obtained a verdict and judgment for $425.60, and, its motion for a new trial being overruled, the defendant appealed to this court.

There are several assignments of error, but from the view we take of the case there need be but one of them considered. The thirty-sixth assignment of error is as follows: "The court erred in not granting a new trial, the verdict being contrary to the law and the evidence, in this: The evidence showed that the shipment was interstate, and controlled by exclusive Federal legislation."

This assignment is well taken and must be sustained. The court erred in rendering judgment for the appellees, and should have instructed the jury to return a verdict for the defendant, and rendered a judgment in accordance therewith. That the suit was for the recovery of the penalty prescribed by the statute of Texas, approved May 6, 1882, for failure of a carrier to deliver goods in its possession, upon demand of the consignee and tender by him of the freight specified in the bill of lading, and for the sum of $3 claimed as demurrage, and that the suit was for

the recovery of no other sum, nor for the enforcement of any other demand made against defendant, is disclosed by the pleadings and the evidence adduced upon the trial.

That the act upon which the plaintiffs' claim for a penalty is based is in conflict with the Federal law entitled, "An Act to regulate commerce," is, we think, now settled beyond question by the decision of the Supreme Court of the United States in the case of Gulf, Colorado & Santa Fe Railway v. Heffly, 158 U. S., 98. Until Congress legislated on the subject the State law was in force; but after the passage of the act of Congress of February 4, 1887, entitled, "An Act to regulate commerce," the Act of Texas cited above, so far as it imposes a penalty for failure of a common carrier engaged in the interstate commerce to deliver goods in his possession, upon tender of the amount of freight named in the bill of lading, became inoperative. The two statutes operate on the same subject-matter, and prescribe different rules concerning it; and when this is so, they conflict, and the State law must necessarily give way to the Federal. But the statutes of a State may operate as to carriers engaged in interstate commerce, when they are not in conflict with Federal statutes upon subjects which are committed to Congress by the Constitution of the United States.

The plaintiff having failed to show any right of recovery for the penalty prescribed by the Texas statute, and the court not having jurisdiction to entertain a suit for the recovery of the demurrage claimed, the judgment is reversed and the cause dismissed.

Writ of error refused.                    *Reversed and dismissed.*